**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 30547 |
| | ) | Chapter 13 |
| CHRISTINA M. TRIMARCHI, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

These matters come before the Court on the objection of Glenn Stearns, the Chapter 13 Standing Trustee (the "Trustee"), to confirmation of the Chapter 13 plan filed by Christina M. Trimarchi (the "Debtor") and on the application of John P. Carlin, the attorney for the Debtor, for compensation. For the reasons set forth herein, the Court sustains the Trustee's objection and denies confirmation of the Debtor's plan. The Court finds that the Debtor fails to commit all of her disposable income to fund the plan. The Court holds that it is improper for the Debtor to claim a marital adjustment on Line 19 of the B22C Form for housing and related utility expenses for a home that she and her family occupy and use, but that is solely owned and paid for by her non-debtor spouse, as well as claim the housing and utility standard expense deduction on Line 25B. The Court affords the Debtor fourteen days to file an amended plan in accordance with the findings made herein. A confirmation hearing on the amended plan is set for February 26, 2010 at 11:00 a.m. The uncontested application of John P. Carlin for compensation is allowed in full as requested.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (L), and (O).

## II. FACTS AND BACKGROUND

The facts are undisputed. On August 20, 2009, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor is married, but her spouse did not file a petition. On her Schedule A, the Debtor indicates that she does not own any real property. The Debtor's non-filing spouse owns real property located in Bensenville, Illinois (the "Bensenville Property"). According to the Debtor, her spouse owned the Bensenville Property prior to their marriage. The Debtor, her spouse, and her eight year old son reside in the Bensenville Property. The Debtor's spouse is solely responsible for and pays the mortgage on the Bensenville Property.

The Debtor filed the requisite B22C Form (Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income) which indicates total monthly income for both spouses on Line 11 of $10,097.66. On Line 16, the Debtor lists the correct applicable median family income for an Illinois household of three as $68,730. Further, on Line 19 of the B22C Form, the Debtor claims the following disputed expenses as a marital adjustment: (1) mortgage on non-filing spouse's home $2,316; and (2) non-filing spouse's additional utility bills for maintenance of the swimming pool $250. The other items on Line 19 for the non-debtor spouse's expenses for his vehicle payment and credit card debt are not in

-3-

dispute. The Debtor subtracts these expenses from the $10,097.66 monthly income to arrive at a current monthly income of $6,493.66 for purposes of 11 U.S.C. § 1325(b)(3). The Debtor lists her annualized current monthly income as $77,923.92 on Line 21. Because her annual income is over the median, the Debtor indicates on Line 23 that disposable income is determined under § 1325(b)(3). Given the amount of unsecured claims, § 1325(b)(4)(A)(ii) requires an applicable commitment period or plan term of five years or sixty months.

Next, the Debtor calculates the deductions from her income allowed under 11 U.S.C. § 707(b)(2) and lists on Line 25B standardized IRS housing and utilities expense of $1,527. After making the other applicable and appropriate entries for various line items not in dispute, the Debtor arrives at a monthly disposable income under § 1325(b)(2) on Line 59 of the B22C Form of $69.82.

On the same day the Debtor filed her petition, she also filed a Chapter 13 plan. The Debtor's plan states that she has total household monthly income of $7,012.88 and total monthly household expenses of $6,201, which leaves $811.88 available for plan payments. The plan provides that the Debtor will pay the Trustee $500 monthly for sixty months for total payments of $30,000. Pursuant to the plan, the Debtor's unsecured creditors are to receive 22% of their allowed claims.

The Trustee objects to the Debtor's plan because she allegedly fails to use all of her disposable income to fund the plan. The Trustee's objection is twofold. First, the Trustee objects to the Debtor taking two deductions on the B22C Form on Lines 19a and 25B ($2,316 and $1,527) for the mortgage expense paid by her non-filing spouse as a marital adjustment and as a housing and utilities standard deduction. Second, the Trustee objects to the Debtor's deduction

-4-

on Line 19d for her spouse's "additional utility bills for maintenance of pool" in the sum of $250.00 as unnecessary and unreasonable.

John P. Carlin, an attorney who represents the Debtor, filed his application for compensation on September 24, 2009. Proper notice was given to all parties in interest. Therein, he seeks an award of fees in the sum of $3,500 for services rendered to the Debtor through case closing. The application indicates that the Debtor entered into the Court's Model Retention Agreement. The fees sought are within the current general ceiling for flat fees presently allowed in this District. *See generally In re Geraci*, 138 F.3d 314, 320-21 (7th Cir. 1998); *In re Kowalski*, 402 B.R. 843, 849 (Bankr. N.D. Ill. 2009); *In re Andreas*, 373 B.R. 864, 871-72 (Bankr. N.D. Ill. 2007). No objections to the application were filed.

The parties were given the opportunity for an evidentiary hearing and declined. The Court took the matters under advisement based on the filed papers.

## III. APPLICABLE STANDARDS

Section 1325(b)(1) of the Bankruptcy Code speaks to confirmation of a plan and when an objection is filed. That section provides in relevant part as follows:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> . . .
>
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will

-5-

> be applied to make payments to
> unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B). Section 1325(b)(2) defines "disposable income" for purposes of this subsection as "current monthly income received by the debtor" less certain expenses that differ depending on whether the debtor's household income is above or below the median family income for the applicable state. 11 U.S.C. § 1325(b)(2); *In re Forbish*, 414 B.R. 400, 402 (Bankr. N.D. Ill. 2009).

The term "current monthly income" consists of two parts. *In re Clemons*, Bankr. No. 08-82968, 2009 WL 1733867, at *3 (Bankr. C.D. Ill. June 16, 2009). The first part is comprised of "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period" before the case was filed. 11 U.S.C. § 101(10A)(A). The second component of current monthly income "includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents. . . ." 11 U.S.C. § 101(10A)(B). Current monthly income is calculated in Part I of the B22C Form. *Forbish*, 414 B.R. at 402. Thus, the non-debtor spouse's income is appropriately considered and added to the total income reflected on Line 11 on the B22C Form to the extent such income is regularly used for the household expenses of the debtor or the debtor's dependents.

If a debtor's non-filing spouse has income, that portion of the spouse's income not expended regularly to pay household expenses is deducted from current monthly income. *In re Shahan*, 367 B.R. 732, 737 (Bankr. D. Kan. 2007); *In re Sale*, 397 B.r. 281, 286-87 (Bankr. M.D.N.C. 2007); *In re Quarterman*, 342 B.R. 647, 650-51 (Bankr. M.D. Fla. 2006). This

-6-

deduction is effected on Line 19 of the B22C Form as a "marital adjustment" for amounts "NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents ." See *In re Hall*, Bankr. No. 06-71296, 2007 WL 445517, at *3 n.2 (Bankr. C.D. Ill. Feb. 12, 2007) ("Use of line 19 appears to be the proper way, at least initially, to identify the portion of a non-filing spouse's income which should not be included in calculating a debtor's disposable income."). In other words, the Line 19 marital adjustment is provided to allow married debtors filing individually to deduct that portion of their non-filing spouse's income that is not encompassed within the debtor's current monthly income under § 101(10A)(B). *In re Dugan*, Bankr. No. 07-40899-13, 2008 WL 3558217, at *5 (Bankr. D. Kan. Aug. 12, 2008). The instructions on the B22C Form at Line 19 are clear and provide that a non-debtor spouse's expenses not paid on a regular basis for household expenses of the debtor or the debtor's dependents are excluded from the determination of disposable income. It therefore follows that household expenses paid on a regular basis for a debtor and dependents are not to be excluded on Line 19.

The "determination of the amount paid by a non-filing spouse on a regular basis for household expenses of the debtor or the debtor's dependents is necessarily fact specific and subject to interpretation." *In re Travis*, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006). "[C]ourts have an obligation to scrutinize challenges to Line 17 [Line 19 in a Chapter 13 case] very carefully." *Id.*

Federal Rule of Bankruptcy Procedure 1007(b)(6) provides that a debtor in a Chapter 13 case must file a statement of current monthly income, prepared as prescribed by the appropriate Official Form, and if the debtor has current monthly income greater than the applicable median

family income, a calculation of disposable income made in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form. FED. R. BANKR. P. 1007(b)(6). The Judicial Conference of the United States, in October 2005, promulgated Official Form B22C to enable debtors to provide the information required to calculate whether the debtor's income is above or below the median, and if above, to calculate the deductions allowed by 11 U.S.C. § 707(b)(2)(A) and (B). *In re Guzman*, 345 B.R. at 640, 643 (Bankr. E.D. Wis. 2006). Because the Debtor's annualized current monthly income on Line 21 of the B22C Form exceeds the Illinois median income for a family of three ($68,730), the Form directs her to complete Part IV, "Calculation of Deductions From Income."

Pursuant to § 1325(b)(3), when a Chapter 13 debtor's annual income exceeds the median income for households in the applicable state, the debtor's expenses must be determined by using the formula set forth in § 707(b)(2)(A) and (B). *In re Ross*, 375 B.R. 437, 443 (Bankr. N.D. Ill. 2007); *Guzman*, 345 B.R. at 643. Section 707(b)(2)(A) and (B) is the mathematical test created to determine whether a presumption of abuse arises in a Chapter 7 case. It is undisputed that the Debtor's annual income exceeds the median income for households in Illinois. Thus, the Debtor's expenses must be determined under § 707(b)(2)(A) and (B).

In order to determine disposable income for a Chapter 13 debtor with current monthly income greater than the applicable median family income, § 707(b)(2)(A)(ii)(I) sets forth certain "monthly expenses" that include a "debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides. . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I). On Line 24 of the B22C

-8-

Form, an above-median income Chapter 13 debtor is to enter the National Standard amount for living expenses such as food, clothing, and the like. On Lines 25 through 29, a debtor is told to enter the Local Standard amount for other expenses. Line 25B requires the "IRS Housing and Utilities Standards; mortgage/rent expense" for "your county and household size." It is undisputed that the Debtor has a three-member household and resides in DuPage County, Illinois. The IRS Housing and Utilities Local Standards for a three-member household in DuPage County, Illinois is $1,527. *See* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm (select Illinois).

## IV. DISCUSSION

### A.    The Trustee's Objection to the Mortgage Expense of the Non-filing Spouse

The Trustee argues that the Debtor is entitled to only one deduction for her non-filing spouse's mortgage expense. The Trustee maintains that the B22C Form is not clear as to where this deduction should be taken. According to the Trustee, "marital adjustment" is defined in Line 19 of the B22C Form as any income "NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents." The Trustee contends that under this definition, the mortgage expense paid by the Debtor's spouse for a home where the Debtor resides does not constitute an appropriate marital adjustment. The Trustee states that the Debtor could achieve the same result in reducing her disposable income by utilizing Line 26 to add $789 to the IRS standard deduction of $1,527 on Line 25B. The Trustee does not oppose the mortgage deduction from the Debtor's income on Line 19 as long as it is the only deduction the Debtor takes for her spouse's mortgage expense. The Trustee asserts that by removing the mortgage deduction from Line 25B, the total expenses allowed under the IRS standards on Line 38 are reduced and

subsequently the total of all deductions on Line 52 is thereby reduced by $1,527 leaving a monthly disposable income on Line 59 of $1,596.82. As a result, according to the Trustee, the Debtor has disposable income each month of $1,596.82, which is an amount sufficient to pay her unsecured creditors 100% of their allowed claims, not the 22% she proposes in her plan.

It is under Part IV, Line 25B of the B22C Form that the Debtor takes a deduction for mortgage/rent expense of $1,527 under the Local Standards. The Debtor also lists the mortgage expense of $2,316 paid by her non-filing spouse on Line 19a as a marital adjustment. According to the Trustee, the marital adjustment effectively further reduces a debtor's monthly disposable income while the Local Standards mortgage/rent expense increases a debtor's monthly expenses. The Trustee contends that because the Debtor has taken the mortgage/rent expense as a deduction in the Local Standards and as a marital adjustment to her income, she is in effect "double dipping" by taking two deductions for the same item.

On the B22C Form, all of the income of a non-filing spouse is included in Part I, Column B, in calculating a debtor's current monthly income. However, the deduction, referred to as a "marital adjustment," is permitted for that portion of a non-debtor spouse's income that is "NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents." The Court has previously held that the B22C Form controls for purposes of the § 707(b) calculations. *Ross*, 375 B.R. at 443. The B22C Form is required in all Chapter 13 cases and should be followed as directed. Otherwise, there is no real point in its existence and requirement. Indeed, "[t]he Official Forms . . . were promulgated by the Rules Committee and approved by the Judicial conference of the United States. . . . [T]he Official Forms share the presumption of validity." *In re Morgan*, 374 B.R. 353, 361 (Bankr. S.D. Fla. 2007). The voluminous criticisms and problems

-10-

with the B22C Form and the concept of current monthly income are best left to Congress and the drafters of the Official Forms to rectify and correct, not this Court, which is obliged to follow the Form as best it can. *See generally* 5 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY §§ 379.1-380.1 (3d ed. 2000 & Supp. 2007-1). A non-debtor spouse's expenses paid for anyone other than the debtor and dependents of the debtor are appropriately deducted because those expenses should not effectively subsidize the debtor's plan and household expenses.

The Court finds that the Debtor is not entitled to take both of the deductions on the B22C Form for the mortgage expense paid by her non-filing spouse. The Court finds that the Debtor improperly lists the mortgage expense on Line 19a as a marital adjustment. The Court further finds this expense is regularly paid for the household expenses of the Debtor and her son who reside in the home and benefit therefrom. The Court concludes that the plain language and directions for Line 19 preclude the Debtor from deducting the mortgage expense of her non-debtor spouse as a marital adjustment because the mortgage is an expense that is paid on a regular basis for the household expenses of the Debtor and her son, as well as the non-debtor spouse.

The Debtor does not dispute that she, her spouse, and her eight year old son reside in the Bensenville Property. Further, it is undisputed that the mortgage expense is being paid on a regular basis by her non-debtor spouse. Certainly, the regular payment of the mortgage expense on a home where the Debtor and her son reside constitutes a contribution to the household expenses of the debtor and her dependents. *Cf. Travis*, 353 B.R. at 526-27 (to the extent that a Chapter 7 debtor's non-filing spouse contributed income for food and utilities, those contributions were made to the household expenses of the debtor and his dependents, and thus had to be excluded from the marital adjustment calculation). The Court notes that the Debtor did not

-11-

adduce any evidence to show that the claimed portion of her spouse's income devoted to the mortgage payments and the pool maintenance and utility expenses was not paid on a regular basis for the household expenses of the Debtor. To allow the Debtor a marital adjustment for the mortgage expense would be in direct contravention of the plain language on the B22C Form. Thus, an expense for mortgage payments made by the non-debtor spouse on a regular basis for a home where the Debtor and her family reside does not appropriately belong as a marital adjustment on the B22C Form.

The Trustee argues, on the one hand, that the mortgage expense of the spouse does not properly belong on Line 19 because of the definition of marital adjustment. On the other hand, however, the Trustee does not oppose the deduction from Line 19 as long as it is the only deduction the Debtor takes for her spouse's mortgage expense. The Trustee suggests that the Debtor should remove the deduction from Line 25B to reduce the total expenses allowed under the IRS standards on Line 38 and subsequently the total of all deductions on Line 52 by $1,527, thereby leaving a monthly disposable income on Line 59 of $1,596.82. The Trustee's suggestion contradicts the express directions on the B22C Form, the Bankruptcy Code, and established case law.

In order to eliminate the Debtor's "double dipping" with respect to the mortgage expense, the Court finds that the appropriate place to remove the deductions is on Line 19 under the marital adjustment. The Debtor has appropriately claimed the standard housing and utilities deduction on Line 25B. Section 1325(b), by reference to § 707(b)(2)(A), allows the Debtor to claim the IRS housing and utilities deduction. *See In re Farrar-Johnson*, 353 B.R. 224, 227 (Bankr. N.D. Ill. 2006). The Debtor is entitled to deduct the standard housing expense under the IRS standards

-12-

even though she has no housing expense. *See id.*; *cf. In re Ross-Tousey*, 549 F.3d 1148, 1162 (7th Cir. 2008) ("a debtor who owns his car free and clear may take the Local Standard transportation ownership deduction under the section 707(b)(2)(A)(ii)(I) means test"). The Court finds that even though the Debtor is not liable for the mortgage on the Bensenville Property, she is entitled to take the applicable standard housing and utilities deduction on Line 25B. Indeed, if she was making additional housing and utility payments, she would be entitled to claim them. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(V).

Moreover, the elimination of the mortgage expense as a marital adjustment appears to be a more common sense approach to the Debtor's "double dipping." To allow the Debtor to claim the standard mortgage and utilities expense on Line 25B as an IRS housing and utilities deduction and as a marital adjustment on Line 19 unjustly enriches the Debtor at the expense of her unsecured creditors. As the Seventh Circuit Court of Appeals noted, a debtor should not be allowed to use a "phantom deduction to reduce the recovery by [her] unsecured creditors without benefitting any other creditor." *In re Turner*, 574 F.3d 349, 356 (7th Cir. 2009). Because the Debtor is not responsible for the mortgage on the Bensenville Property and is not paying that debt, she should not be able to deduct that debt as a martial adjustment and as a standard IRS housing and utilities deduction. The consequence of listing the expense on Line 19 on the B22C Form results in a prohibited "phantom" deduction.

The Debtor cites to *In re Clemons*, Bankr. No. 08-82968, 2009 WL 1733867 (Bankr. C.D. Ill. June 16, 2009) in support of her position that she should be allowed to take the mortgage expense deduction as a marital adjustment. The issue in the *Clemons* case was whether a marital adjustment could be claimed for a mortgage expense for which the debtor was not contractually

-13-

liable. The court held that the debtor was entitled to a martial adjustment for the mortgage payment and the real estate taxes even though her non-filing spouse was responsible for the debt. Judge Perkins, in dicta, opined that it was "not appropriate to construe the term 'household expenses of the debtor or the debtor's dependents' as including mortgage related expenses on which the debtor has no contractual liability." *Id.* at *5. The Court respectfully disagrees with this view because in this case, the Debtor and her dependent child live in the Bensenville Property and benefit therefrom.

Judge Perkins agreed with *In re Shahan*, 367 B.R. 732 (Bankr. D. Kan. 2007) where the court determined that mortgage payments made by the debtor's non-filing spouse on a home that was titled in the non-filing spouse's name alone and payments she made on a vehicle that was also titled in her name, were neither payments on debts secured by assets of the estate nor claims against the debtor, and thus, were not considered to be amounts paid on a regular basis for household expenses of the debtor. Judge Perkins agreed with the *Shahan* court's reasoning that despite the fact that the house and car were assets of the debtor's household, to attribute the spouse's income for payment of those debts to the debtor would put the non-filing spouse in a worse financial position than if he had joined his spouse in the bankruptcy petition. *Id.* He concluded that the debtor was entitled to a martial adjustment for the mortgage payment and real estate taxes. *Id.*

This Court respectfully disagrees and concludes that the instructions on Line 19 mandate the result here, contrary to *Shahan* and *Clemons*. To do otherwise ignores the clear directions for Line 19. To allow such deduction on the basis that the Debtor is not liable on the underlying note and mortgage ignores the reality that the Debtor benefits from the payment of the mortgage

-14-

expense. This expense is a regularly paid household expense that benefits the Debtor. To allow her to deduct this expense on Line 19 is detrimental to her unsecured creditors.

**B.     The Trustee's Objection to the Non-filing Spouse's Utility Bills for the Pool**

Next, the Trustee objects to confirmation of the Debtor's plan because the Debtor deducts $250 on the B22C Form on Line 19d as a marital adjustment for her spouse's additional utility bills for maintenance of a swimming pool. The Trustee contends that this deduction from the Debtor's income is not reasonably necessary for the support of the Debtor and her dependents. In addition, the Trustee maintains that $250 per month to heat a swimming pool is more than the monthly heating bills for most homes in the winter. Thus, the Trustee argues that the deduction is unreasonable on its face. According to the Trustee, if this deduction is removed from Line 19, it increases the current monthly income on Line 20 and also increases the total current monthly income on Line 53 to $6,743. In turn, the monthly disposable income on Line 59 would increase to $319. As a result, the Debtor would be required to pay a dividend to the unsecured creditors of $19,140 ($319 x 60 = $19,140) or approximately 82% of their allowed claims, not the 22% proposed in her plan.

The Court agrees with the Trustee on both points with respect to the deduction of $250 for maintenance of the swimming pool. Expenses associated with a swimming pool are not reasonably necessary. *In re Durczynski*, 405 B.R. 880, 885 (Bankr. N.D. Ohio 2009); *In re Shaw*, 311 B.R. 180, 184 (Bankr. M.D. N.C. 2003), *aff'd, Shaw v. United States Bankr. Adm'r*, 310 B.R. 538 (M.D.N.C. 2004). The Court views a swimming pool as a luxury item that is not reasonably necessary for the support of the Debtor or her dependents. "Expenses may amount to an obvious indulgence in luxuries when a debtor is enjoying luxuries that are not enjoyed by an average

-15-

American family." *In re Nicola*, 244 B.R. 795, 798 (Bankr. N.D. Ill. 2000). Moreover, it appears

undisputed that the Debtor and her family reside in the Bensenville Property and have the use of

the pool. It therefore follows that the Debtor's spouse pays this expense on a regular basis for the

household expenses of the Debtor and her son. Thus, this expense item should not be claimed

on Line 19 of the B22C Form per the instructions.

The Debtor argues that her spouse, who is not seeking Chapter 13 relief, should not be

forced to give up his enjoyment in the swimming pool because of her financial situation. This

argument fails. There is no evidence that anyone is or will be unable to use the pool if this line

item deduction is not allowed. After all, the non-debtor spouse is paying that expense. When a

debtor seeks Chapter 13 relief, "the entire family is affected by the sacrifices and special efforts

required by the Code. This family may not continue its prepetition lifestyle to the detriment of

creditors." *In re Gleason*, 267 B.R. 630, 635 (Bankr. N.D. Iowa 2001); *see also In re McNichols*,

249 B.R. 160, 168 (Bankr. N.D. Ill. 2000) ("debtors may not maintain their pre-petition lifestyles

at the expense of their creditors"). The Court finds that a swimming pool is not a basic need

required by the average American family or this family. Rather, it is a luxury item that is not

necessary for the support of the Debtor and her dependent. In addition, the Court agrees with the

Trustee's point that $250 per month to heat the swimming pool is excessive. The Debtor's

unsecured creditors should not have their dividend reduced in order to subsidize this luxury

expense item for her family.

Furthermore, "the object of a Chapter 13 bankruptcy is to balance the need of the debtor

to cover [her] living expenses against the interest of the unsecured creditors in recovering as much

of what the debtor owes them as possible. . . ." *Turner*, 574 F.3d at 355. Here, the Debtor does

-16-

not need to heat the pool. As the Trustee correctly points out, by removing this deduction from Line 19, it increases the current monthly income on Line 20 and also increases the total current monthly income on Line 53 to $6,743. The monthly disposable income on Line 59 thus increases to $319, and would result in a dividend to unsecured creditors of $19,140 ($319 x 60 = $19,140) or approximately 82% of their allowed claims. The Court finds that a higher dividend to the unsecured creditors far outweighs the Debtor's need to heat and maintain a swimming pool that she uses.

The Debtor contends that if the Court disallows the deduction for the heating of the swimming pool, it will be functionally unusable, and thus will affect negatively the non-filing spouse's interest in this asset by lowering the value of the Bensenville Property. This point lacks merit and there is no evidence to support it. The mere fact that a swimming pool is unheated does not render it unusable, especially in the summer months. The Debtor has not proffered any evidence to show that an unheated swimming pool reduces the value of the real property upon which it is located or that the pool could not be drained of water in the winter and the piping "winterized" to avoid damage during that season.

Accordingly, the Court sustains the Trustee's objection to the Debtor's Chapter 13 plan because it does not provide for all of the Debtor's disposable income to be applied to make payments to the unsecured creditors. The Court affords the Debtor fourteen days to file an amended plan consistent with the findings made herein.

-17-

## V. CONCLUSION

For the foregoing reasons, the Court sustains the Trustee's objection to the Debtor's plan and denies confirmation. The Court affords the Debtor fourteen days to file an amended plan consistent with the findings made herein. A confirmation hearing on the amended plan is set for February 26, 2010 at 11:00 a.m. The application of John P. Carlin for compensation is allowed in full as requested on the separate order provided with the application.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _____1/25/10_____

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Christine M. Trimarchi
**Bankruptcy No. 09 B 30547**

John P. Carlin, Esq.
Chang & Carlin, L.L.P.
1305 Remington Road, Suite C
Schaumburg, IL 60173

Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court, Suite 120
Lisle, IL 60532

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604

Carolyn A. Suzzi, Esq.
Office of Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court, Suite 120
Lisle, IL 60532